# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. WILLIAM B. AOSSEY, JR., Defendant. | No. 14-CR-116-LRR **ORDER** |

## I. INTRODUCTION

The matter before the court is the detention of Defendant William B. Aossey, Jr.

## II. RELEVANT PROCEDURAL BACKGROUND

On July 13, 2015, the court accepted the jury's verdicts of guilty on Counts 1-15 of the Superseding Indictment. *See* July 13, 2015 Order (docket no. 98). Under Count 1, Defendant was convicted of conspiracy, a violation of 18 U.S.C. § 371 and punishable by a maximum term of five years' imprisonment. Under Counts 2-8, Defendant was convicted of making false statements on export certificates, each a violation of 21 U.S.C. § 611 and punishable by a maximum term of imprisonment of up to three years. Under Counts 9-15, Defendant was convicted of wire fraud, a violation of 18 U.S.C. § 1341 and punishable by a maximum term of imprisonment of twenty years on each count. Defendant was acquitted of Counts 16-18, money laundering, violations of 18 U.S.C. § 1957(a) and punishable by a term of imprisonment not to exceed ten years on each count. Defendant was also acquitted of Count 19, money laundering conspiracy, a violation of 18 U.S.C. § 1956(h) which carries a maximum punishment of ten years in prison. Despite the jury's acquittal on Counts 16-19, the court may consider acquitted conduct at sentencing. *See, e.g.*, *United States v. Papakee*, 573 F.3d, 569, 576 (8th Cir. 2009).

On July 13, 2015, following the jury's guilty verdicts, the court held a detention

hearing, at which it heard evidence and argument from the government and from Defendant. *See* July 13, 2015 Minute Entry (docket no. 99). On July 22, 2015, the government filed a Memorandum in Support of Motion to Detain Defendant (docket no. 103).

## III. STANDARD OF REVIEW

Title 18, United States Code, Section 1343(a) governs a defendant's release or detention pending sentencing. 18 U.S.C. § 3143 provides in pertinent part:

> [… T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. [§] 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under [§] 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with [§] 3142(b) or (c).

18 U.S.C. § 3143(a).

The presumption in 18 U.S.C. § 3142(b), which governs a defendant's release or detention before trial, favors release. *United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir. 1993) (citing 18 U.S.C. § 3142(b)). In contrast, the presumption in 18 U.S.C. § 3143(a), which governs a defendant's release or detention after conviction and before sentencing, favors detention. *Id.* (citing 18 U.S.C. § 3143(a)). As a result, "[a] convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom." *Id.* A defendant carries the burden to show by clear and convincing evidence that he or she "is not likely to flee if released upon suitable conditions." *United States v. Welsand*, 993 F.2d 1366, 1367 (8th Cir. 1993) (per curiam).

## IV. ANALYSIS

In addition to the evidence presented at the detention hearing, the parties rely on

evidence previously presented at trial. The court considered all the evidence and arguments in reaching its decision on post-trial detention.

### A. *Defendant's Evidence and Arguments*

Defendant argues: (1) there is a substantial likelihood that a motion for acquittal or new trial will be granted; (2) he is not a danger to any other person or the community; and (3) he is not a flight risk.

The court considered the arguments for acquittal or new trial and found them to be without merit. Neither the government or this court asserts that Defendant's release would pose a danger to anyone or the community. The court does, however, note that Defendant has donated meat that has been in a freezer for four years from the date of production.

The evidence at trial established that Defendant is a 75 year old United States citizen, born in Cedar Rapids, Iowa. He went to college in Iowa. He lived and traveled in numerous foreign countries throughout his life. He founded Midamar on July 1, 1974 and remained its CEO, President and Director thereafter. Defendant testified he began turning over control of Midamar to his sons when he attained age 65; however, the government's cross examination cast significant doubt on his purported relinquishment of control of Midamar. Midamar does business in fifty states as well as internationally and employs about fifty people at its Cedar Rapids location.

Defendant claims he took full responsibility for his actions that led to the Indictment and convictions. In anticipation of the government's evidence, Defendant attempted to distance himself from the criminal conduct that led to the Indictment of Defendant's long-time friend, Ali Afif Al Herz, by a federal grand jury for illegal exportation of firearms to Lebanon. Defendant also offered evidence that he was permitted to travel internationally while on pretrial supervision and returned to Cedar Rapids each time.

## B. *Government's Evidence and Argument*

The government argues that Defendant poses an unacceptable flight risk and that because he has been convicted and faces imprisonment, he has a far greater incentive to flee than he had during the time he was on pretrial release. Noting that the evidence established that Defendant has friends and acquaintances throughout the world, the government argues Defendant could successfully flee and live in a foreign country. Recognizing the limitations on preventing people from fleeing from the United States, the government argued passport confiscation, G.P.S. monitoring and home confinement would provide little assurance that he would not flee.

Although the government admitted there is no direct evidence linking Defendant to illegal firearm and ammunition shipments from the United States to Lebanon, the government presented evidence which connects Defendant to the illegal shipments, including: (1) Defendant is a close friend to Ali Afif Al Herz, who is currently charged with illegal shipments of firearms and ammunition to Lebanon; (2) Defendant authorized the loading of shipping containers containing firearms and ammunition at Midamar; (3) Midamar does not generally permit private individuals access to its loading dock; (4) Herz was permitted to use Midamar's loading dock four times in two years to illegally ship containers containing firearms and ammunition to Lebanon; (5) Midamar rarely accepts currency for shipping services and thus the $8,000 in currency received from Ali Afif Al Herz for the use of its loading dock on May 8, 2015 was extremely unusual; (6) Defendant is seen in surveillance tapes entering one of the shipping containers containing Bobcats which secreted the firearms and ammunition destined for Lebanon; (7) In an intercepted telephone call during the investigation, Defendant reported to Ali Afif Al Herz that the container was gone. Herz told Defendant he and his son were leaving for Lebanon. Defendant reported the paperwork would follow shortly; (8) Even though the shipping container belonged to Herz, Defendant became extremely agitated when he learned the

4

container had been stopped and searched by law enforcement and demanded a full report from the trucking company referring to the container as "my container"; (9) Even though the shipping container purportedly belonged to Herz and did not contain any Midamar goods, Defendant had his attorney contact the FBI to find out why the container was searched; (10) When law enforcement arrived at Midamar to execute a search warrant relative to the illegal firearm shipments to Lebanon, Defendant was called to the scene. Defendant was confrontational and uncooperative, demanding the search stop until his attorney was present and demanding the agents on the scene write down their names; (11) In May 2015 the firearms that were hidden in the shipping container were stored after purchase and before loading at a house owned by Defendant and rented to Ali Afif Al Herz. The government also presented evidence that an email from Defendant urged donations of household goods for Syrian and Lebanese refugees to fill Herz's May 8, 2015 container. The government argued this was designed to disguise the true nature of the shipment the illegal transportation of the firearms and ammunition.

In addition, Defendant violated the conditions of his pretrial release. The conditions of Defendant's pretrial release included a prohibition of associating with anyone engaged in criminal activity as well as a requirement to report to his supervising probation officer any law enforcement contact. *See* Order Setting Conditions of Release (docket no. 10) at 1. As discussed, the government presented evidence that Defendant associated with Ali Afif Al Herz, and Herz is under indictment for illegally shipping containers containing firearms and ammunition. In addition, Defendant had contact with law enforcement when law enforcement executed a search warrant at Midamar while Defendant was present. Defendant did not report this contact to his supervising probation officer as required by the Order Setting Conditions of Release.

## V.  RULING

The court finds Defendant failed to establish by clear and convincing evidence that

he does not pose a risk of flight. The trial evidence and the government's evidence at the detention hearing, when coupled with the powerful incentive to flee following the jury's verdicts, convince the court that detention is warranted.

Defendant has always maintained that although he misbranded meat, he was not guilty of a criminal offense. In his own words at trial "[i]t was a labeling infraction, but absolutely nothing criminal, there's never been anything criminal about it." The jury found that his conduct was criminal. The fact that Defendant faces a substantial term of imprisonment is now a reality. His incentive to flee increased dramatically following the verdict. Confiscating his passport and placing him on G.P.S. monitoring would not assure his appearance for sentencing given his experience traveling internationally and his international contacts.

Although Defendant has community ties, including business interests and family in Iowa, the court questions whether these ties demonstrate stability. Defendant's current connection to Midamar is unknown. Several scenarios are possible depending on whom is asked and under what circumstances. Defendant claims he no longer is the CEO, President or a director of Midamar. Midamar has been under investigation by the government since about 2010. Defendant claims he has handed control of the business to his sons, Jalel and Yahya. His sons, Midamar and Islamic Services of America (which he also controlled), are currently under indictment for conspiracy, false statements on export certificates, wire fraud and money laundering growing out of the misbranding of meat and the international shipment of the same. *United States v. Aossey, et al*, NDIA 14-CR-138. If convicted, the future of Midamar is in doubt, as is the future of his sons. If convicted his sons would face substantial prison terms as well. The impact of all of this on Midamar's business is unknown.

Even when he knew he was under investigation for misbranding meat, he continued to misbrand meat. In July 2014, Defendant had establishment numbers and production

dates removed from meat and donated to a school in Philadelphia. In fact the meat had been produced over four years before it was donated. An employee testified it was not unusual for him to donate "out of date" meat.

While on pretrial release Defendant has not earned the trust of the court. Defendant violated the terms of his pretrial release by failing to notify his probation officer of contact with law enforcement, even though the terms of his supervision were discussed with him when he was first released. His ties to the illegal firearms shipments to Lebanon remain under investigation.

Accordingly, Defendant must remain detained pending sentencing because he has not established by clear and convincing evidence that he is not likely to flee if released under suitable conditions.

**IT IS SO ORDERED.**

**DATED** this 22nd day of July, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA