# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> WILLIAM B. AOSSEY, JR. <br><br> Defendant. | No. 14-CR-116-LRR <br><br> **ORDER** |

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.  RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . *1*

III. RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . *2*

IV.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    A.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    B.   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        1.   *Timeliness of Motion* . . . . . . . . . . . . . . . . . . . . . . . . *4*
        2.   *Evidence of conspiracy* . . . . . . . . . . . . . . . . . . . . . . *4*
        3.   *Use of character evidence* . . . . . . . . . . . . . . . . . . . . *8*
            a.   *Testimony about falsified insurance documents* . . . . . . *9*
            b.   *Testimony about Defendant's behavior* . . . . . . . . . . *10*
            c.   *Notice of 404(b) evidence* . . . . . . . . . . . . . . . . . . *11*
            d.   *404(b) limiting instruction* . . . . . . . . . . . . . . . . . *12*

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

## I. INTRODUCTION

The matter before the court is Defendant William B. Aossey Jr.'s "Motion for New Trial" ("Motion") (docket no. 109).

## II. RELEVANT PROCEDURAL HISTORY

On December 5, 2014, a grand jury returned a nineteen-count Superseding Indictment (docket no. 15), charging Defendant with the following: conspiracy to make

and use materially false statements and documents, sell misbranded meat and commit mail and wire fraud in violation of 18 U.S.C. § 371 (Count 1); making false statements on export certificates in violation of 21 U.S.C. § 611 (Counts 2-8); wire fraud in violation of 18 U.S.C. § 1343 (Counts 9-15); money laundering in violation of 18 U.S.C. § 1957(a) (Counts 16-18); and money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 19). On July 7, 2015, a jury trial commenced. *See* Minute Entry for July 7, 2015 (docket no. 81). On July 13, 2015, the jury returned verdicts, finding Defendant guilty of Counts 1, 2-8, and 9-15, and not guilty of Counts 16-18 and 19. Jury Verdict (docket no. 94). On July 13, 2015, the court accepted the jury's verdicts. Order (docket no. 98). On July 28, 2015, Defendant filed the Motion. On August 7, 2015, the government filed a Resistance (docket no. 110). On August 14, 2015, Defendant filed a Reply (docket no. 111). Defendant requests oral argument on the Motion, but the court finds that oral argument is not necessary. The matter is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND

Evidence at trial established that the United States Department of Agriculture ("USDA") initiated an investigation of Midamar Corporation, Defendant's company, in 2010. The USDA began its investigation after questions arose about Midamar's compliance with regulations on meat exports. The investigation revealed that shipments of meat were labeled to reflect a facility of origin that was approved for export to certain countries, when in fact the meat had originated at a different unapproved facility. The false facility of origin was also designated on various export documents.

Several witnesses, current and former employees of Midamar, testified that they had been instructed by Defendant and other supervisors to remove facility-of-origin labeling from meat packages shipped through Midamar's warehouse facilities. The witnesses testified that the removal of labeling happened frequently, but not while USDA inspectors were on the premises for scheduled visits. Other current and former employees testified

that they had been instructed to misstate the facility of origin on export and sales documents, at the behest of Defendant and others. One witness, Debra Lapsey, testified that she had also been instructed to falsify insurance documents on a prior occasion.

Following evidence and arguments by both the government and Defendant, the jury found Defendant guilty of Counts 1-15, and not guilty of Counts 16-19.

## IV. ANALYSIS

Pursuant to Federal Rule of Criminal Procedure 33, Defendant requests that the court grant a new trial as to Counts 1-15.

### A. Applicable Law

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (quotation marks omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)). "Motions for new trials based on the weight of the evidence are generally disfavored." *Id.* District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### B. Application

Defendant states two grounds to support the Motion: (1) that "the government failed to offer any evidence of a conspiracy" by failing to show that anyone "agreed, expressly

3

or otherwise, with Defendant to engage in unlawful conduct"; and (2) that the court "improperly admitted bad character evidence at trial." Motion at 1. The government resists both arguments and contends that the Motion is untimely and must be summarily denied. Resistance at 3.

### 1. *Timeliness of Motion*

The government argues that the Motion must be dismissed because it was not filed within Rule 33's "strict filing deadline." Resistance at 3. Rule 33 requires that motions for a new trial "be filed within 14 days after the verdict or finding of guilty," unless it is "grounded on newly discovered evidence." Fed. R. Crim. P. 33(b). The fourteen-day filing deadline runs from the time of the jury verdict, not the entry of judgment. Fed. R. Crim. P. 33 advisory committee's note to 1998 amendments ("It is the intent of the Committee to remove th[e] element of inconsistency [in the running of the deadline] by using the trial court's verdict or finding of guilty as the triggering event."). Defendant's arguments are not grounded in newly discovered evidence, making fourteen days the applicable deadline. The jury reached its verdict on July 13, 2015. Therefore, the deadline for filing the Motion was July 27, 2015. Because Defendant filed the Motion on July 28, 2015, the court agrees with the government that the Motion is untimely by one day. The court recognizes that untimeliness alone is likely sufficient to deny the Motion. *United States v. French*, 748 F.3d 922, 935 (9th Cir. 2014) (holding that it is not an abuse of discretion to deny a Rule 33 motion as untimely). Nevertheless, the court shall proceed to consider the merits of the Motion.

### 2. *Evidence of conspiracy*

Defendant argues that "the government failed to offer any evidence of a conspiracy." Motion at 1. In support of this argument, Defendant claims that "none of the witnesses called to testify [stated] that they had an agreement with [D]efendant or understood the objective of the alleged conspiracy." "Brief in Support of Motion for a

New Trial" ("Brief") (docket no. 109-1) at 8. Defendant further contends that a jury note submitted to the court during deliberations "reveals the evidentiary insufficiency" on the conspiracy charge. *Id.* at 9. The government argues that "there was strong evidence of a conspiracy in this case" and that "[t]here was no miscarriage of justice." Resistance (docket no. 110) at 8.

To support a conspiracy charge, "the [g]overnment must prove: (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement." *United States v. Meeks*, 756 F.3d 1115, 1118 (8th Cir. 2014). To show the existence and knowledge of an agreement, "the government need only establish a tacit understanding . . . co-conspirators, which may be shown through circumstantial evidence." *United States v. Tillman*, 765 F.3d 831, 834 (8th Cir. 2014) (quoting *United States v. Jackson*, 610 F.3d 1038, 1044 (8th Cir. 2010)) (quotation marks omitted). Therefore, there is no requirement that the government prove an express agreement or prove an agreement using only direct evidence. *See id.* at 833 ("The government 'is not required to prove an express agreement.'" (quoting *Jackson*, 610 F.3d at 1044)).

The court finds that the government offered sufficient evidence to support the conspiracy charge and that there is, accordingly, no miscarriage of justice warranting a new trial. Even if none of Defendant's employees who testified at trial "admitted that they willing[ly] participated" in a criminal conspiracy, Brief at 9, the government was under no obligation to prove that specific identified employees had agreed to the conspiracy. If the government offered evidence that Defendant entered an agreement with *any* person, whether they testified or not, such evidence points to the existence of an agreement. *See Rogers v. United States*, 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not

needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown."). The government provided such evidence.

Witnesses testified about numerous departments comprising Defendant's company, including shipment documentation, warehouse operations, package labeling, account management and international sales. These departments were directly supervised by different people and sometimes relied on multiple levels of management. The compartmentalized structure of Defendant's company amounts to circumstantial evidence that Defendant could not feasibly carry out his long-term, company-spanning scheme without the aid of a willing co-conspirator. Further, employee-witnesses provided names of several supervisors, not including Defendant, who instructed them to alter documents or remove product labeling, including Jan Smith, Phil Payne, Virginia Birdnow and Scott Primrose. Evidence that these supervisors instructed employees to carry out Defendant's scheme amounts to circumstantial evidence that they had an agreement with Defendant to aid in the conspiracy. Witnesses also testified that supervisors instructed employees to stop unlawful activities when USDA inspectors visited the premises, which points to the supervisors' knowledge that their actions were illegal.

Defendant identifies testimony from trial that opposed the government's evidence of conspiracy. *See* Brief at 8-9. First, Birdnow and Primrose testified that they instructed employees to remove product labeling only at Phil Payne's direction, making their participation unwilling. Second, Defendant personally testified that he reached no conspiratorial agreement with anyone. However, the presence of this opposing testimony does not simply erase the government's evidence. At trial, the jury weighs the government's evidence against the opposing testimony to the degree it sees fit. *See* Final Jury Instructions (docket no. 91) at 7. Likewise, in motions for a new trial, the court may "weigh the evidence [and] disbelieve witnesses." *Campos*, 306 F.3d at 579.

The government introduced evidence that (a) employees of Defendant's company falsified documents and unlawfully removed labels from meat packaging, (b) the unlawful activity occurred in more than one department of the company, (c) various supervisors instructed lower-level employees to take action in furtherance of the unlawful activity and (d) those supervisors halted the unlawful activity when USDA inspectors were present. This evidence provides a strong circumstantial basis for concluding that Defendant and his company's supervisors knowingly agreed, tacitly or expressly, to participate in unlawful activities. Admissions from Defendant or his co-conspirators are not the only forms of proof capable of proving conspiracy; circumstantial evidence may be sufficient. *Tillman*, 765 F.3d at 834. Accordingly, in light of the evidence and analysis above, the government offered sufficient evidence of the existence of a conspiracy to satisfy the court that no miscarriage of justice occurred.

Defendant also argues that the jury note submitted to the court "reveals the evidentiary insufficiency." Brief at 9. However, the jury note does not change the court's analysis. During deliberation, the jury submitted a note asking the following: (1) "do the two parties both need to know that they are conspiering [sic]?" and (2) "[a]re [a]ctions taken an [a]greement?" Jury Question (docket no. 92) at 2. The court responded to the jury's questions by directing it to "recall the evidence, re-read the instructions and continue to deliberate." *Id*. at 1. "A jury is presumed to follow its instructions. Similarly, a jury is presumed to understand a judge's answer to its questions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation omitted).

Here, the jury asked a question about the law and the court directed it to rely on the evidence and the instructions. Defendant concedes that the substantive answers to the jury's questions could be found in the instructions. *See* Brief at 9 (stating that a model instruction equivalent to an instruction given to the jury provides an answer to the jury's first question); *id*. at 10 (stating that an instruction given to the jury on the topic of the

7

jury's second question was a "correct statement of the law"). Defendant provides no evidence to defeat the presumption that the jury understood its instructions and the court's response to its questions. Likewise, there is no indication that the jury's questions undermine the government's evidence. Accordingly, because the jury note is not inconsistent with the jury's verdicts, it does not indicate a miscarriage of justice.

In light of the foregoing, the court shall deny the Motion to the extent it argues that a new trial is warranted because the government failed to offer evidence of conspiracy or that a new trial is warranted because the jury note implied that insufficient evidence supported Defendant's participation in a criminal conspiracy.

### 3. *Use of character evidence*

Defendant argues that "[t]he government undermined the fairness of the trial by attacking . . . [D]efendant's character." Brief at 12. Defendant further argues that, even if the allegedly improper evidence was admissible, the court "erred in refusing to give the jury a limiting instruction" and such error was "not harmless." *Id.* at 14. The government contends that the character "testimony related to the issues of intent to defraud, motive, absence of mistake, and lack of accident, [and that such issues] were the primary issues in the case." Resistance at 9.

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Eighth Circuit has interpreted Rule 404(b) to permit "[e]vidence of prior bad acts . . . when it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) such that its probative value is not outweighed by any

8

prejudicial impact." *United States v. Cvijanovich*, 556 F.3d 857, 864 (8th Cir. 2009) (quoting *United States v. Ruiz-Estrada*, 312 F.3d 398, 403 (8th Cir. 2002)) (quotation marks omitted). "[T]he prosecutor must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2)(A).

Defendant alleges that two strands of testimony from government witness Debra Lapsey constitute inadmissible character evidence: first, testimony that she prepared false documents at Defendant's direction because he wanted to submit a false insurance claim for product loss; and second, "[t]estimony . . . where she alleged that [Defendant] chased her down the hall yelling and screaming which caused her to run and hide in a bathroom." Brief at 11.

### *a. Testimony about falsified insurance documents*

Lapsey's testimony that Defendant instructed her to submit false insurance documents was admissible under Rule 404(b). Intent to make false statements and intent to defraud were elements of multiple charges brought by the government. *See, e.g.*, Final Jury Instructions (docket no. 91) at 20-24 (listing "intent to defraud" and knowledge of false statements as elements of the underlying objectives of the charged conspiracy); *id.* at 25 (listing "knowingly and intentionally ma[king] a false statement" and "intent to defraud" as elements of making of a false statement on an export certificate); *id.* at 28 (listing "intent to defraud" as an element of wire fraud). Where intent is an element of an offense, "the government need not await . . . [D]efendant's denial of intent before offering evidence of similar acts relevant to that issue." *United States v. Miller*, 725 F.2d 462, 466 (8th Cir. 1984), *abrogated on other grounds by United States v. Mothershed*, 859 F.2d 585 (8th Cir. 1988).

Lapsey's testimony about Defendant's falsification of insurance documents was admissible as proof of Defendant's intent and his knowledge that his conduct was

9

fraudulent. Defendant's intent to defraud was the central issue in the case. Defendant based his defense largely on his belief that his conduct amounted to an innocent infraction, rather than fraudulent conduct, and that his misunderstanding reflected his lack of intent to defraud. Lapsey testified that, during her employment, Defendant instructed her to falsify insurance documents. Lapsey subsequently communicated her refusal to do so because she believed it was wrong. Lapsey's testimony therefore reflects that she notified Defendant that falsifying insurance documents was wrong, i.e. fraudulent. Her testimony makes it more likely Defendant was aware that similar conduct—falsifying export documents and mislabeling meat—was also fraudulent. If Defendant knew that his conduct was fraudulent, his persistence in that conduct over a period of years would suggest an intent to defraud. Accordingly, pursuant to Rule 404(b), Lapsey's testimony about false insurance documents was admissible as probative of Defendant's intent to defraud.

### b. Testimony about Defendant's behavior

Lapsey also testified that Defendant yelled and screamed at her. Within the context of her testimony, the court also finds this evidence admissible under Rule 404(b) as establishing Defendant's intent. The government asked Lapsey how Defendant responded to her refusal to falsify insurance documents. Lapsey replied that Defendant yelled and screamed at her and demanded that she do as he instructed, until she retreated to a restroom to remove herself from the situation. The government's question was inseparable from its broader use of Defendant's prior conduct to establish intent. Defendant's response after Lapsy insinuated that his conduct was wrong would have a tendency to confirm or deny that he knew his conduct was, in fact, wrong. Defendant might have reacted with surprise that Lapsey believed his actions were wrong, he might have defended the legality of his actions or he might have responded in some other way to reflect unawareness that his conduct was fraudulent. Instead, Defendant berated Lapsey for refusing to do as she was told. Lapsey's testimony suggests that Defendant knew falsifying documents was

fraudulent but he nevertheless expected her to comply with his directions. In responding to the government's question, Lapsey described unflattering behavior exhibited by Defendant, but such detail was not specifically elicited in the government's question and was not met with an objection by Defendant. While the details of Defendant's behavior may have been prejudicial to some degree, the prejudicial impact does not outweigh the probative value. Lapsey's testimony tends to prove that Defendant engaged in fraudulent conduct in the past and that he had notice and apparent knowledge that the past conduct was fraudulent. Her testimony was highly probative of Defendant's knowledge that his subsequent conduct was fraudulent and that his persistence in the scheme reflected an intent to defraud. The testimony was therefore admissible, and any prejudicial effect it may have had did not outweigh its probative value. Accordingly, there was no miscarriage of justice.

### c. *Notice of 404(b) evidence*

Defendant argues that, even if Lapsey's testimony was admissible under Rule 404(b), the government failed to provide the requisite notice. Brief at 12; Defendant's Reply at 7. Rule 404(b)'s notice requirement "is intended to operate as a generalized notice provision which requires the [government] to apprise the defense of the general nature of the evidence of extrinsic acts." *United States v. Robinson*, 110 F.3d 1320, 1326 (8th Cir. 1997) (quoting Fed. R. Evid. 404 advisory committee's note) (internal quotation marks omitted). To the extent Defendant claims he lacked notice of the testimony about false insurance documents, the argument clearly fails. On July 5, 2015, the government filed a supplemental motion in limine (docket no. 76) after learning that Defendant intended to call a series of character witnesses. In the supplemental motion in limine and accompanying brief, the government stated its intent to "offer evidence pursuant to Federal Rule of Evidence 404(b)" and, more specifically, stated that "Debra Lapsey will testify [D]efendant directed her to increase the value of products claimed to have been damaged

11

on insurance claims." Supplement to Government's Motion in Limine (docket no. 76) at 2; Brief in Support of Government's Supplement to Motion in Limine (docket no. 76-1) at 10. This notice was provided two days before trial commenced on July 7, 2015. Such notice sufficiently "reduce[d] surprise and promote[d] early resolution on the issue of admissibility" and, accordingly, satisfied the government's duty under Rule 404(b). *Robinson*, 110 F.3d at 1326 (quoting Fed. R. Evid. 404 advisory committee's note) (quotation marks omitted).

It is true that the supplemental motion in limine did not specifically mention Lapsey's testimony about Defendant yelling at her after she refused to falsify insurance documents. However, the government's notice only needed to state the "general nature" of the 404(b) evidence. *Id.* As discussed above, Lapsey's testimony about Defendant's behavior was inseparable from the broader inquiry into Defendant's prior fraudulent acts, and, therefore, it fits within the notice that the government provided. Notably, at trial, Defendant failed to object to the testimony as outside the scope of the notice provided. Accordingly, the government satisfied Rule 404(b)'s notice requirement by filing its supplemental motion in limine before trial.

### d. *404(b) limiting instruction*

Defendant contends that, even if Lapsey's testimony was admissible and the government gave sufficient notice, "[t]he court was required to provide the jury a limiting instruction to ensure that the evidence [was] not considered for any improper purpose." Brief at 14. Defendant claims that he "requested that the [c]ourt read to the jury a limiting instruction" but "[t]he [c]ourt declined." *Id.* Where a party uses 404(b) evidence at trial, a limiting instruction is generally warranted. *United States v. Anwar*, 428 F.3d 1102, 1111 (8th Cir. 2005) ("Generally, a limiting instruction should be given to inform the jury of the narrow purpose for which evidence of other acts is admitted."). However, the court is not required to give a limiting instruction if a party does not request it. *See United*

*States v. Bamberg*, 478 F.3d 934, 939 (8th Cir. 2007) (stating that courts are not required to provide a limiting instruction "sua sponte with respect to Rule 404(b) type evidence" (quoting *United States v. Perkins*, 94 F.3d 429, 435-36 (8th Cir. 1996)) (quotation marks omitted)).

Defendant's recollection that he requested a limiting instruction is not borne out by the record. At the close of evidence, the parties conferred with the court to discuss the final jury instructions. The court affirmatively inquired about whether Defendant wanted a 404(b) instruction, and the parties and the court discussed the matter at length. During the discussion, the government stated it would not object to a 404(b) instruction for the testimony about the false insurance document, and the court proceeded to talk through what the potential instruction might look like. Following the discussion, however, Defendant clarified that he was not seeking a 404(b) instruction for that testimony and an instruction on character evidence would sufficiently address his concerns. *See* Jury Trial (Vol. III) Transcript (docket no. 116) at 167-70. Later during the conference, Defendant mentioned the testimony about Defendant yelling at Lapsey. Defendant initially requested a 404(b) instruction about the testimony. However, immediately after requesting it, Defendant again concluded that a 404(b) instruction was unnecessary and that the testimony would be sufficiently addressed by an instruction stating that questions asked by attorneys do not amount to evidence. *See id.* at 183.

The parties later reconvened with the court to discuss the proposed final jury instructions that had been drafted during a recess. After reviewing the proposed instructions, the parties disputed only the character evidence instruction. They ultimately agreed to language that became Instruction Number 21. *See* Final Jury Instructions at 44 ("You have heard testimony about the character and reputation of the defendant for truthfulness and lawfulness. Remember, questions by the attorneys concerning the defendant's character are not evidence."). While discussing the proposed final

instructions, Defendant did not revive his previously abandoned request for a 404(b) instruction. After finalizing the instructions, the court gave Defendant a final opportunity to make a record, and Defendant again failed to request a 404(b) instruction. *See* Jury Trial (Vol. III) Transcript (docket no. 116) at 197-200. Defendant had numerous opportunities to request a 404(b) instruction and even made overtures toward doing so, but he repeatedly failed to follow through with a request, even after the court affirmatively raised the issue and the parties discussed it at length. The court, therefore, concludes that it was Defendant who declined a 404(b) instruction, not the court.[1] Because Defendant did not request a 404(b) instruction, the court's failure to provide one was not erroneous and does not amount to a miscarriage of justice warranting a new trial. *See Perkins*, 94 F.3d at 436.

In light of the foregoing, the court shall deny the Motion to the extent it argues that a new trial is warranted in light of the use of bad acts evidence and that a new trial is warranted in light of the lack of a 404(b) limiting instruction.

### V. CONCLUSION

In light of the foregoing, Defendant William B. Aossey Jr.'s "Motion for New Trial" ("Motion") (docket no. 109) is **DENIED**.

**IT IS SO ORDERED.**

---

[1] The court does not suggest that Defendant's mischaracterization of the jury instruction conference was intentional. It is worth noting that Defendant filed the Motion before the trial transcript became available, and, therefore, his recollection of the conference necessarily came from memory or trial notes.

**DATED** this 15th day of September, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA